UNITED STATES DISCTRICT COURT
EASTERN DISTRICT OF NEW YORK
..................................................................X
Bishop William B. Caractor,
Reverend Helen Clay-Caractor



Case No. 13-CV-3800 (SJF)(AKT)

        Plaintiff(s)
    -against-

**AMENDED COMPLAINT**

**JURY DEMAND**

Housing Bridge 93rd Avenue Family Residence
Mr. Noel Francis, Program Director
Ms. Magard, Director of Social Services
Ms. Nicole Washington, Case Manager
Ms. S. Evans, Housing Specialist

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 16 2013 ★
LONG ISLAND OFFICE

RECEIVED
DEC 16 2013
EDNY PRO SE OFFICE

        Defendant(s)
..................................................................X

Plaintiff(s) Bishop William B. Caractor and Reverend Helen Clay-Caractor commence this action pursuant to 42 U.S.C. 1983 Civil Rights Act and the Fourteenth Amendment to the US Constitution, Due Process of Law. The court is invoked by 28 U.S.C. 1331.

### STATEMENT OF AFFIRMATION

Plaintiff(s) Bishop William B. Caractor and Reverend Helen Clay-Caractor duly depose and make the following statement: Plaintiff(s) Bishop William B. Caractor and Reverend Clay-Caractor resides at 170-02 93rd Avenue, Room 2E, Jamaica, New York 11433 known as, Housing Bridge 93rd Avenue Family Residence. The defendants, Mr. Noel Francis, Program Director, Ms. Magard, Director of Social Services, Ms. Nicole Washington, Case Manager and Ms. S. Evans, Housing Specialist are employees of Housing Bridge Family Residence and operate under the policies and procedures established by The City of New York Department of

Homeless Services. It is the policy of DHS that all clients be given the same Independent Living Plan. No exceptions (See Exhibit A).

The policy is spelled out in the DHS Independent Living and Savings Plan. Defendants are aware of this policy and by being employees of Housing Bridge which operates under the color of the law willfully and intentionally deprived the plaintiff(s) Due Process of the Law, and placed the plaintiff(s) Bishop William B. Caractor and Reverend Helen Clay-Caractor in non-compliance which jeopardizes their rights to remain in temporary housing until such a time that they can acquire permanent housing.

## FACTUAL BACKGROUND

On November 16, 2012, Plaintiff(s) Bishop William B. Caractor, Reverend Helen Clay-Caractor and their child, Samantha Clay entered Housing Bridge Facility which is a 2 Tier Family Residence Shelter due to Hurricane Sandy and it was documented by DHS that we entered the system by the Federal Emergency Act. All clients are required to produce documentation such as Marriage Certificates, Birth Certificates, Driver's Licenses, Medical Records, Prescribed Medications, Names of Doctors and contact information, Social Security Cards and proof of employment. These documents are used to establish the ILP (Independent Living Plan) which is formulated by DHS and it is required that all clients save 30% of their monthly net income (See Exhibit B). The Defendants required that the Plaintiff(s) save 50% of their gross income and placed them in non-compliance which is against the policy and procedures spelled out in the Independent Savings Plan. There was an intervention by the Legal Department by DHS directing the defendants to adhere to the policy of DHS as it relates to the Savings Plan. Defendants refused to adhere to the directive from the Department of Homeless Services and placed the plaintiffs in non-compliance. The Independent Living Plan also requires that clients are to meet with their case manager (Ms. Nicole Washington) every two weeks to provide housing searches, proof of income, medical appointments and proof of savings. The defendants stated to the

plaintiff(s) "You are long term residence in the shelter system and you will have you to meet with us once a week." All DHS clients are required to meet with their case managers every two weeks (due process of law). The defendants requested documentation from plaintiff(s) as it relates the Independent Living Plan and Compliance. Those documents were a letter from the Real Estate Broker concerning the current negotiation of a house purchase and a bank statement. Before the plaintiffs could supply the requested documentation they were placed in non-compliance which can cause you to be expelled, sanctioned or be involuntarily transferred (see Exhibits C and D). Plaintiff(s) Bishop William B. Caractor and Reverend Helen Clay-Caractor supplied the defendants, Mr. Noel Francis, Program Director, Ms. Magard, Social Services Director, Ms. Nicole Washington, Case Manager and Ms. S. Evans, Housing Specialist with the requested documents in a timely fashion. Plaintiff(s) were told, "We will not accept these documents" and defendants began to harass the plaintiff(s). These documents will allow the plaintiff(s) to be in compliance with their Independent Living Plan. It is the plaintiff(s) belief that this is a tactic of Housing Bridge to harass and to discriminate against its clients (see Caractor vs. Salvation Army, New York City Department of Homeless Services) where the defendants used the same tactics to log the plaintiff(s) Bishop William B. Caractor out of the facility causing him not to be with his family for two years.

## 1983 CLAIM

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the part injured in an action at law, suit in equity, or other proper proceedings for redress.....

42 U.S.C. 1983. To establish individual liability under 1983, plaintiffs "must show (a0 that the defendant is a person acting under the color of the state law, and (b) that the defendant caused the plaintiff to be deprived of a federal right." Back v. Hastings on Hudson Union Free Sch. Dist., 365 F. 3d 107, 122 (2d Cir.2004) (internal quotation marks and citation omitted); see Straker v. Metropolitan Transit Auth., 2008 WL 788643, at *4 (E.D.N.Y. Mar. 20, 2008). Significantly, "suits in Federal court under 1983 are proper to secure compliance with the provisions of the Social Security Act on the part of the participatory states." Edelman v. Jordan, 415 U.S. 651, 675 (1974); see Koster v. Webb, 598 F. Supp. 1134, 1136 (E.D.N.Y 1983) (holding 1983 "may be used by plaintiffs to enforce their purported right to emergency shelter under the Social Security Act") see also Main v. Thibutot, 448 U.S.1 (1980). Defendants are employees of Housing Bridge and are fully aware of the policy and procedures of state laws, city ordinances, policies and procedures of DHS and Federal Statues and required under the color of the law to treat each client equally. Thus by them not receiving legal documentation which would allow the plaintiff(s) to remain in compliance, shows that the defendants intentionally and willfully violated the plaintiff(s) constitutional rights by not receiving documents that are required under the law to remain in the temporary housing shelter.

Plaintiffs pray that the court would enter a judgment against the defendants for there willful and intentional violations of their constitutional rights and refusal to follow DHS's directive which constitutes failure to adhere to the Fourteenth Amendment to the US Constitution, Due Process of Law.

Plaintiffs have suffered humiliation, emotional stress and mental anguish as a result of the defendants actions regarding their rights that are protected by the US Constitution Fourteenth Amendment and the 1983 Civil Rights Act.

## DEMAND

The plaintiff(s) pray that the court enter an order finding the defendants guilty for violating the Plaintiff(s) Constitutional Rights under The Fourteenth Amendment of the US Constitution (Due Process of the Law) and the 1983 Civil Rights Act and award the sum of $300,000 (Three Hundred Thousand Dollars) for punitive damages, compensatory damages and damages for emotional stress, mental anguish and humiliation and issue an order of injunctive relief barring the defendants from violating the US Constitution, The Fourteenth Amendment and 1983 Civil Rights Act.

Respectfully Submitted

*/s/ Bishop William B. Caractor*

Bishop William B. Caractor, Pro Se                         Date : December 16, 2013
170-02 93rd Avenue
Room 2E
Jamaica, New York 11433
718 607-3277

*/s/ Reverend Helen Clay-Caractor*

Reverend Helen Clay-Caractor, Pro Se                    Date : December 16, 2013
170-02 93rd Avenue
Room 2E
Jamaica, New York 11433
718 607-3277

# EXHIBIT A

# New York City
# Department of Homeless Services

**PROCEDURE NO. 09-500**

| SUBJECT: | APPLICABLE TO: | EFFECTIVE DATE: |
|---|---|---|
| CLIENT CONDUCT AND RESPONSIBILITY | ALL FAMILIES WITH CHILDREN ELIGIBLE FOR TEMPORARY HOUSING ASSISTANCE, FAMILY SHELTER PROVIDERS, AND DHS STAFF | June 25, 2009 |
| **ADMINISTERED BY:** NYC DHS- DIVISION OF FAMILY SERVICES | **APPROVED BY:** ANNE HELLER EXECUTIVE DEPUTY COMMISSIONER | |

## FORMS TO BE USED

Appendix 1(A): Statement of Client Rights and Client Code of Conduct
Appendix 1(B): Formulario de ...
Appendix 2(A): Client Apartment Review Checklist
Appendix 2(B): Formulario de...
Appendix 3(A): Client Apartment Rejection
Appendix 3(B): Formulario de Apartamento Rechazado por el Cliente
Appendix 4: Conditional Placement Intake Form
Appendix 5: Family Admission Assessment
Appendix 6: Independent Living Plan for Families Instruction Sheet
Appendix 7: Service and Bi-Weekly Plan/Independent Living Plan for Families
Appendix 8A: Notice of First ILP Violation
Appendix 8B: Aviso de ...
Appendix 9A: Family Contribution Notice
Appendix 9B: Aviso de ...
Appendix 10: Client Responsibility Sanction Recommendation
Appendix 11(A): Notice to Discontinue Temporary Housing Assistance
Appendix 11(B): Aviso Para Descontinuar su Asistencia de Vivienda Temporaria (THA)
Appendix 12: Sanction Instruction Notice
Appendix 13(A): Sanction Enforcement Letter
Appendix 13(B): Letra de ...
Appendix 14: Sanctioned Family Referral
Appendix 15(A): Readmission to Shelter for Sanctioned Family/Family Member
Appendix 15(B): Formulario

## PURPOSE

One of the most important principles underlying DHS' mission is that all homeless individuals or families receive safe, temporary shelter and that planning for permanent housing begin immediately. This Procedure

- Ensuring access to childcare services when necessary to enable a parent, or adult family member who is caretaker of a child, to fulfill engagement requirements; and
- Assisting a family to keep track of and comply with all PA requirements and appointments.

If a family fails to apply for and keep open a PA case, and the family would otherwise be eligible to receive PA benefits, a Provider shall document the family's non-compliance in the family's case record and follow the steps outlined in Section II to recommend a sanction, if appropriate. Some non-compliance with PA requirements may lead to discontinuance of the family's THA. DHS may, on a case by case basis, discontinue a family's THA, if the family's non-compliance with PA requirements allows for such action. In these instances, the PA-based sanction from shelter will last until the non-compliance is cured. Being found ineligible for PA by itself will not affect a family's access to shelter.

### F.  INCOME CONTRIBUTION REQUIREMENTS

A family found eligible for THA must apply for and use any benefits, income and other resources to reduce or eliminate the need for THA. This includes paying a contribution towards the cost of shelter. This contribution is based on the family's benefits, income and other resources and the cost of the family's shelter. If a family has an open PA case, HRA will budget the family's income and determine the amount of their contribution for shelter.

If a family is ineligible for PA, DHS will determine the amount of the family's contribution and issue the family a Family Contribution Notice [Appendix 9]. DHS' calculation will be based on a family paying 30% of their gross income as their shelter contribution.

#### 1. Family Responsibility

A family must co-operate with DHS, HRA and the shelter provider in determining the amount the family must contribute to the cost of their shelter and in providing updated information when any circumstances change. The family must also make payment to the shelter provider in full and in a timely manner.

A family must comply with the income contribution requirements by:
- Producing all documents necessary for establishing or modifying the family's public assistance budget; and
- Making timely payments of the budgeted amount to the Provider by a money order.

#### 2. Provider Responsibility

A Provider is responsible for:
- Collecting the client contribution,
- Maintaining accurate records of each family's payments, and
- Notifying DHS when a family fails to comply with the income contribution requirements.

If a family fails to comply with income contribution requirements, a Provider shall document the family's non-compliance in the family's case record and follow the steps outlined in Section II to recommend a sanction. DHS may discontinue a family's THA based on its review of the family's non-compliance with income contribution requirements. A sanction from shelter for failure to comply with income contribution requirements will last until the non-compliance is cured.

### II.  DISCONTINUANCE OF TEMPORARY HOUSING ASSISTANCE

8

# EXHIBIT B

# HOUSING BRIDGE

## Housing Bridge
## Savings Contract

Name & Address of Shelter: **93rd Street Family Residence**

Client's Name: **WILLIAM CARACTOR/HELEN CARACTOR**

PA CASE #: **5196938-01** Date of Entry into shelter system: **11/27/2012**

Housing Specialist/Case Manager's Name: **NIA LAURY**

List all of client's expenses (if additional pages are needed, please attach):

Source of Income/ Name of Employer: **SSI/MERCER HEALTH&BENEFITS LLC**
Total Net Monthly Income: **$ 5331.50** *This is Incorrect this number is gross*

| Expenses | Frequency (i.e., weekly, bi-weekly, monthly) | Amount |
|---|---|---|
| 1. Food | MONTHLY | $ 500 |
| 2. Laundry | MONTHLY | $ 100 |
| 3. Transportation | MONTHLY | $ 200 |
| 4. Childcare | | |
| 5. Phone | MONTHLY | $ 400 |
| 6. Miscellaneous (Clothing, Phone, etc.) | MONTHLY | $ 50<br>CAR PAYMENT=$290.63<br>CAR INSURANCE= $142.00 |

Total Monthly Expenses: $ **1833.63**

In an effort to obtain permanent housing, client, **WILLIAM CARACTOR/HELEN CARACTOR** agrees to save **$2665.75** per **month**. Failure to adhere to this contract may result in Next
Step proceedings.

---

Caseworker Name: **NIA LAURY**

Signature: _____

Resident (print name): **WILLIAM CARACTOR/HELEN CARACTOR**

Signature: *Bishop William B. Caractor*

Start Date: 1/4/2013    End Date: _____

# EXHIBIT C



● **Office: 718-441-5641**   **Fax: 718-441-55655**
**124-15 Metropolitan Ave. Kew Gardens, NY, 11415**

Builder...Developer...Private Investor

6/24/13

Re: Bishop Willam B. Caractor

To whom it may concern:

Please be advised that we are in current negotiations with Mr. Caractor for the purchase of a single family house located at 240-06 Caney Rd. Rosedale, NY, 11422. We are anticipating to close this tranasaction within a 90 day period.

Hooman Enayatian

# EXHIBIT D



**Bank**

America's Most Convenient Bank®

1120 Avenue of the Americas
New York, NY 10036

07/02/2013

To Whom It May Concern:

Re: **4273860093**

Our Customer, **Helen Caractor** has held an account with TD Bank, N.A. since **11/06/2012**.

Please note **Helen Caractor** has kept the account in good standing and is recognized as a valued Customer of TD Bank, N.A.

I may be contacted at the phone number below with any questions.

Sincerely,

*[signature]*

**Vladimir Rosario| Senior Customer Service Representative | 43rd & 6th  | NMLS ID# 599353**
**TD Bank, America's Most Convenient Bank**
**1120 Avenue of the Americas | RC #5468**
T: 212.354.6061| F: 212.354.4083 | Vladimir.Rosario@td.com


**Bank**
America's Most Convenient Bank®

# TD SIMPLE CHECKING - 4273860093

TD SIMPLE CHECK

**Account History**     **Account Details**     **Pending Transactions**     **Statements**

## Account Overview for 4273860093

| | | |
|---|---|---|
| Your Account Balance as of (Date 6/28/2013): | ($2.01) | • Ready to order more checks? It's easy |
| Your Total Current Pending Transactions: | $1,192.56 | • Up to $100 cash back! See **TD Busine** |
| | | • Buying your first home? **Get our Firs** |
| **Your Available Balance:** | **$1,190.55** | • Protect yourself from identity theft. **Le** |

## Account History

**Show Transactions from**  Last 10 Days              **Show By Date Range:** From                  ☐ to

No Account History Available

UNITED STATES DISCTRICT COURT
EASTERN DISTRICT OF NEW YORK
...................................................................X
Bishop William B. Caractor,
Reverend Helen Clay-Caractor                                    Case No.

        Plaintiff(s)                                     Certificate of Service

        -against-

Housing Bridge 93rd Avenue Family Residence
Mr. Noel Francis, Program Director
Ms. Magard, Social Services Director
Ms. Nicole Washington, Case Manager
Ms. S. Evans, Housing Specialist

        Defendant(s)
...................................................................X

Plaintiff(s) Bishop William B. Caractor, Reverend Helen Clay-Caractor residing at 170-02 93rd Avenue, Room 2E, Jamaica, New York 11433 deposes and states, a copy of the Complaint will be served on the defendants at Housing Bridge Family Residence located at 170-02 93rd Avenue, Jamaica, New York 11433.

Per court order dated November 22, 2013 and signed by the Honorable Sandra J. Feuerstein, the application to proceed *in forma pauperis* was granted and the defendants will be served by the US Marshall's office.

Respectfully Submitted

*Bishop William B Caractor*

Bishop William B. Caractor, Pro Se         Date : December 16, 2013
170-02 93rd Avenue
Room 2E
Jamaica, New York 11433
718 607-3277